## HOLLINGER, ET AL. v. HOLLY, ET AL

1. The act of 1843, which requires creditors to file their claims in the clerk's office of the Orphans' Court, within six months after the estate is represented insslvent, creates a bar to all claims not so presented.
2. The omission to verify the claim so filed, by the affidavit of the claimant, is not ground for rejecting the claim, unless an exception to it is filed within the time allowed by the act.

Writ of Error to the County Court of Mobile.

THE writ of error in this case is sued out by several of the creditors of the estate of James M. Ashton, whose claims were rejected by the Court, upon the final settlement of that estate as an insolvent estate.

Albert Mudge presented for allowance, a judgment obtained by him in the Circuit Court against James M. Ashton, in his life time.   The claim had been presented to the administrators within eighteen months after letters granted.   The administrators ob-

jected to it on the ground that it had not been filed in the clerk's office within six months after the estate was declared insolvent. The objection was sustained.

Thomas P. Fennel presented a similar claim, in which the judgment was against the estate, upon *sci. fa.* against the administrators. This was rejected for the same reason.

William Magee presented a note upon Ashton, which had been presented to the administrators within eighteen months after letters granted. This was rejected for the same reason.

John Hartwell presented an account, which had been presented to the administrators within eighteen months after letters granted. This was rejected for the same reason.

The administrator of D. McLean presented an account for medical services rendered during the last illness of Ashton. This was objected to for the same reason; but the objection was overruled, and the account being proved, was allowed in full.

Peter Clark presented a note, made by Ashton in his life-time, which had been duly presented to the administrators, and was embraced in the schedule of claims against the estate, filed by the administrators when they applied to have the estate represented insolvent, which schedule has remained in the County Court ever since. This was rejected for the same reason.

Wm. De F. Holly, the administrator of the estate, under settlement, presented for allowance a judgment recovered by him in the Circuit Court of Mobile, against Ashton in his life-time, which in the report of insolvency made by him, is expressed thus—Wm De Forest Holly, cash $19,780 34, in the schedule of claims filed by said Holly when he applied to have the estate declared insolvent. The schedule was sworn to by Holly, and was accompanied by a certificate of the clerk of the Court, stating that Holly had recovered such a judgment, setting out dates, &c. &c.

This claim was objected to by William Magee, a creditor, on the ground that it had not been filed in the clerk's office in six months after the estate was declared insolvent. The objection was sustained.

Adam C. Hollinger presented an open account, for goods, wares, &c. sold and delivered Ashton in his life-time. This had been presented to the administrators in due time, and was also filed in the clerk's office within six months after the declared insolvency. When filed it was sworn to as being correct, by one

Carr, according to the best of his belief. The administrators objected to the allowance, because the account was not verified by the oath of the *claimant* The objection was sustained, and the account rejected.

William Magee presented for allowance a note executed by Ashton in his life-time, and which had been presented to the administrators within eighteen months after grant of letters of administration, and before the passage of the act of 1843, relating to the settlement of insolvent estates. The administrators objected to this claim, that it had not been filed in the clerk's office within six months after the estate was declared insolvent. The objection was sustained, and the claim rejected.

The several creditors whose claims were rejected, excepted to the decision of the Court, and they now join in the assignment of errors.

CAMPBELL, for the plaintiffs in error, insisted, that there was nothing in the statute [Clay's Dig. 192,] which creates a forfeiture, although the demand may not be filed according to the terms of the act. The presentation to the administrator seems provided as equivalent to the filing in the clerk's office.

In other States, where the statute is hold as a bar, it is so on account of express terms to that effect. [15 Mass. 264 ; 6 Pick. 330 ; 9 Verm. 143 ; 7 Ib. 136.]

No counsel appeared for the defendants in error.

GOLDTHWAITE, J.—To come to a determination of the several questions arising from this record, it is necessary to refer to statutes not now in force. The course of proceeding, with reference to insolvent estates, was first prescribed by an act passed in 1806. The Orphans' Court, after ascertaining the fact of insolvency, and after directing the lands of the decedent to be sold, was required to appoint two or more commissioners, with full power to receive and examine all claims of the several creditors ; to accomplish this, they were required to cause the times and places of their meetings to attend the creditors 1o be made known in a certain manner ; and six months, and such further time, (as the circumstances of the estate should require,) not exceeding eighteen months, was to be allowed to the creditors for

bringing in and proving their claims before the commissioners : at the end of the limited time these were to make their report, and present, on oath, a list of all claims laid before them, with the sum allowed on each respective claim. Notwithstanding the report, any creditor, whose claim, in whole, or in part, was rejected, or any administrator, &c., who should be dissatisfied with the report, or a particular claim, might, for good and sufficient cause shown to the Court, have the claims referred by the Court to referees, whose report and award thereon, was to be final and conclusive. [Aik. Dig. 152.]

Afterwards, by the act of 1821, it was made the duty of the Judge of the County Court to audit and determine the accounts relating to such estates, under the regulations before prescribed for commissioners ; and creditors were allowed in all cases, to file the evidences of their claims in the clerk's office. But the Judge was permitted to appoint commissioners when in his opinion the case should require that to be done.

It may be observed here, that under these acts, the administrator retained the control of the estate, and was competent to dispute with the several creditors the validity of their claims ; but independent of this authority, the commissioners, under the first act, and the Judge of the County Court, under the last one, were invested with power to *examine* the accounts which were to be *proved* before them. As the claims might be examined and were required to be proved, it is scarcely possible that it was intended a creditor might stand by with his claim, at the time fixed by the Commissioners, or Judge for the hearing, and afterwards be let in to receive a dividend. The permission to a creditor to except to the report, and afterwards, on sufficient cause, to have a reference, is quite conclusive that he was concluded, if he omitted to present his demand before the report was made up.

The act of 1843 evidently was intended to introduce a body of rules, entirely new, to govern the proceedings in relation to insolvent estates. The mode by which the insolvency is to be ascertained, the settlement of the administrator with the Court in that event, the nomination by the creditors of an administrator *de bonis non,* his appointment, or the retention of the administrator in chief, in the event that no nomination is made, are all specially provided for, and with much exactness.

58

Then follows the particular section, which we are now to construe. It is as follows, to-wit:

Every person having any claim against such insolvent estate, shall file the same in the clerk's office of said Court within six months after such estate is declared insolvent; and every such claim shall be verified by the affidavit of the claimant; and the clerk shall give a receipt therefor to the claimant, his agent or attorney; and shall endorse on such claim the day on which it was filed; and shall keep a docket or list of all such claims, which shall at all times be subject to the inspection of the administrator and creditors of the estate; and if no opposition shall be made to the allowance of such claim, in the manner hereinafter provided, within three months after the time when the said estate was declared insolvent, such claim shall be admitted and allowed as a good and valid claim against the said estate, without further proof.

The manner of contesting the claims, is provided for by another section, in these terms, to-wit;

At any time within nine months after such estate shall be declared insolvent, the administrator, or any creditor or creditors of the estate, in the name of the administrator, may object to the allowance of any claim filed against the estate, by filing in the clerk's office such objection in writing; and thereupon the Court shall cause an issue to be made up between such claimant, as plaintiff, and the administrator, or the contesting creditor in the name of the administrator, as defendant, by pleading therein in the same manner as if the claimant had sued the administrator thereon at common law.

After ascertaining the manner in which the contest thus instituted shall be tried, the statute proceeds to declare that every executor, &c. of an insolvent estate, shall make a settlement of his accounts as such, at such time (not less than nine nor more than twelve months from the time such estate shall be declared insolvent,) as the Court may appoint; and at such settlement the Court shall adjudge and decree to such creditor *whose claim shall have been allowed as herein provided,* his rateable proportion of all monies then found due from the administrator; reserving nevertheless, in the hands of such executor, &c. a rateable proportion of such monies for such claims as may be then contested and undivided; and a similar settlement and rateable distribution

shall be made at least every six months thereafter, at such times as the Court may appoint, until the estate shall be finally settled and distributed.

When the act, from which we have made such copious extracts, is contrasted with the previous legislation, it will be seen, that, formerly, the only opportunity given to the administrator or creditors to contest the claim of another creditor, was at the final settlement.

The act now in force, instead of this, gives the administrator and creditors at least three months, in every case, to ascertain the validity and correctness of every demand exhibited against the estate or claimed from it. Each claim must be filed within six months after the estate is declared insolvent; and if no opposition is made to it, within nine months from the same time, the claim must be allowed.

Although the statute contains no terms which expressly bar a claim which is not presented within the time provided, yet such seems to be the result of the omission; for the chief object of the enactment would be frustrated if the creditors were permitted to come in with claims after the period has elapsed within which other creditors or the administrator are allowed to contest them; and the opportunity and time which is allowed, evidently for the purpose of enabling those having an adverse right to examine into the accuracy and validity of the several claims, would be taken away, if the claims themselves are presented only at the time when the final adjustment and distribution of the assets in hand is made. The practice which prevailed under the former statutes seems to favor this conclusion, and no instance is known or remembered, in which a claim was acted on or allowed by the Court, which had not been presented at the time fixed for the settlement—whether that was made by commissioners or the Judge himself.

It is supposed by the plaintiffs in error, that preferred claims and judgments obtained against the administrator, or against the decedent, form an exception to the general requirements of the statute; but there seems no room for this exception, when the general object is considered. It is possible the administrator may be liable to suit for a preferred claim whenever the assets in his hands are sufficient to answer it; but however this is, it seems certain whenever such a creditor comes into the special tribunal

created by the act, he comes as any other creditor, and is equally subject to have his claim examined and contested.

So too with the judgment creditor ; indeed, as to him, there is an express provision of the statute, which seems to strongly fortify the general conclusion. It is provided that no suit against the administrator shall be abated by the suggestion of insolvency ; but when that is interposed, the suit proceeds on the other issues to a final determination, and if the insolvency is ascertained, then the judgment is to be certified to the proper Orphans' Court ; and upon a duly certified transcript of such judgment being filed as a claim against the estate, *as provided by the act,* then the plaintiff shall be allowed as a creditor, his rateable proportion of the estate.

It is further supposed, that if the claims against the estate are designated in the schedule, which the administrator is required to present as a preliminary to ascertaining the insolvency, this should be considered as equivalent to filing the claims themselves in the clerk's office by the creditors, and the more especially when these claims are due to the administrator himself. The answer to this is, that each creditor, under the act, has the right conferred, to examine into the claim of every other creditor, and can only ascertain who stands in this relation, by the assertion of a claim in the manner indicated by the act. The creditors summoned by the administrator to contest the insolvency, may be those whose demands are sufficient in amount to produce that condition of the estate, but it cannot be known to other creditors that they claim a participation in the assets, until they assert their right in the mode provided ; nor could any contest be originated upon the schedule presented by the administrator.

. The direction that each claim shall be verified by the affidavit of the claimant, does not seem to be of such a nature as to warrant the rejection of a claim for its omission, when no exception is taken to the claim in the mode pointed out by the act. The creditor or the administrator may doubtless require the claimant thus to verify his claim, but if no exception is taken, there seems no sufficient reason to reject the claim.

These considerations lead us to the conclusion that the provision of the statute requiring all claims to be filed in the clerk's office within six months after the estate is declared insolvent, is im-

perative, and operates so as to entirely bar and exclude from participation in the assets, all creditors who omit to do so.

When the principles here ascertained are applied to the several claims of the creditors shewn upon this record, it will be seen there was no error in rejecting those of Mudge, Fennel, Magee, Hartwell, Clark, and Holly the administrator; and that the claim of Hollinger should have been allowed, as no exception was taken to the claim, when filed in the clerk's office, within the proper time.

The writ of error, however, is irregularly sued out in the names of these creditors jointly, and for this reason must be either dismissed, or so amended as to make Hollinger the sole plaintiff, and the administrator the sole defendant, as provided by the 14th section of the act; if so amended, the judgment of the County Court, upon his claim will be reversed, and the cause remanded, with directions to allow his claim.